1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19

HELAINE HEID, INGRID LEEMAN, and MIRIAM SARAIVA, *individually and on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

CYRACOM INT'L, INC, et al.,

Defendants.

Case No. 22-cv-1445-MMA (KSC)

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF FLSA COLLECTIVE AND CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, NAMED PLAINTIFFS' SERVICE AWARD, AND ADMINISTRATION COSTS**

[Doc. No. 36]

20
21
22
23
24
25
26
27
28

Helaine Heid, Ingrid Leeman, and Miriam Saraiva (collectively, "Plaintiffs") bring this wage and hour action against Defendant CyraCom International, Inc. ("Defendant"). *See* Doc. No. 3 (First Amended Complaint, the "FAC"). Plaintiffs move for final approval of a Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, collective and class action settlement pursuant to Federal Rule of Civil Procedure 23(e) and seek an award of attorneys' fees and costs, a class representative service award, as well as settlement administration costs. *See* Doc. No. 36. Defendant does not oppose Plaintiffs' motion, and the Court preliminarily approved the settlement. *See* Doc. No. 33. On

August 28, 2024, the Court held a final approval hearing on this matter pursuant to Federal Rule of Civil Procedure 23(e)(2) and took the motion under submission.  *See* Doc. No. 44.  For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion.

## BACKGROUND

Defendant provides remote translation and interpretation services to its clients worldwide.  FAC ¶ 40.  Plaintiffs, including collective and class members, are or were interpreters, or similarly titled employees, of Defendant who provide or provided two-way language interpretation for clients.  *Id.* ¶¶ 41–43.  Generally, Plaintiffs assert that Defendant failed: (1) to pay Plaintiffs and other similarly situated employees all earned minimum and overtime wages; (2) to provide compliant meal-and-rest periods; (3) to pay all vested vacation; (4) to furnish accurate wage statements; (5) to reimburse reasonable and necessary business expenses; and (6) to pay all earned wages due upon separation.  *See generally id.*

On September 26, 2022, Plaintiffs filed both their initial complaint with this Court and a Private Attorneys General Act ("PAGA") Notice with the California Labor and Workforce Development Agency ("LWDA").  *Id.* at 53.[1]  Plaintiffs' initial complaint alleged violations of the FLSA, the California Labor Code, and the California Business and Professions Code.  *See generally* Doc. No. 1.  On December 2, 2022, Plaintiffs filed the operative FAC, adding a violation of the PAGA after they failed to receive a response from the LWDA within the statutory period and after Defendant failed to remedy or cure the alleged violations identified in the initial complaint.  *See generally* FAC.

Plaintiffs assert the following twelve claims in their FAC: (1) violation of the FLSA for off-the-clock work; (2) violation of the FLSA for unlawful unpaid breaks; (3) violation of the FLSA for improper kickbacks; (4) violation of California's minimum wage requirements under California Labor Code §§ 200, 218, and 1194; (5) violation of

---

[1] Citations refers to the pagination assigned by the CM/ECF system unless otherwise indicated.

California's overtime laws under California Labor Code §§ 510 and 1194; (6) violation of California's meal-and-rest period requirements under California Labor Code §§ 226.7, 512 and the applicable wage order; (7) violation of California Labor Code § 227.3 for failure to pay all accrued and vested PTO wages; (8) violations of California's wage statement requirements under California Labor Code §§ 226, 1174(d), and 1198; (9) violation of California Labor Code § 2802 for failure to adequately indemnify employees for employment-related expenditures; (10) violation of California Labor Code §§ 201–203 for failure to pay all wages timely upon separation of employment; (11) violations of California's Unfair Competition Law ("UCL") under California Business and Professions Code § 17200, *et seq.*; and (12) violations of the PAGA under California Labor Code § 2698, *et seq.* *Id.* ¶¶ 86–189.

On May 22, 2023, the parties "participated in a long, contentious mediation with David Rotman, a well-known wage-and-hour mediator." Doc. No. 36-1 at 11. Although the parties did not reach a settlement during the meditation, Mr. Rotman made a mediator's proposal on May 24, 2023. *Id.* The parties accepted the mediator's proposal on May 31, 2023. *Id.*

Shortly thereafter, the parties filed a joint status report requesting the Court stay the entire action while they worked to finalize the Settlement Agreement. Doc. No. 19. The Court granted the parties' request and the case remained stayed until December 8, 2023. *See* Doc. Nos. 20; 22; 24. On December 11, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval of the Settlement Agreement, which the Court granted on April 4, 2024. Doc. Nos. 25; 33.

Plaintiffs filed the instant motion on July 31, 2024. Doc. No. 36. On August 5, 2024, the Court ordered Plaintiffs to submit a supplemental brief including their billing records and receipts in support of their request for attorneys' fees and costs. Doc. No. 37. The parties requested a two-week extension of time. Doc. No. 38. The Court granted the parties a one-week extension and reset the hearing to August 28, 2024. Doc. No. 39. The instant motion is unopposed.

1

## THE SETTLEMENT AGREEMENT

The Class and Collection Action Settlement Agreement and Release (the "Settlement Agreement"), attached as Exhibit 1 to the Declaration of Shant A. Karnikian (Doc. No. 36-2 at 11–58), consists of the following collective and class:

**California Class**:  Consists of Named Plaintiffs[2] and all current and former employees employed by Defendant as Interpreters in the state of California during the California Class Period.  Doc. No. 36-2 ¶ 5.  Some California Class Members will also be FLSA Collective Members and/or in the PAGA Representative Group.  *Id.*  The California Class Period is from September 26, 2018 to May 31, 2023.  *Id.* ¶ 6.

**FLSA Collective**:  Consists of Plaintiffs and all current and former employees employed by Defendant as Interpreters in the United States (excluding New York based Interpreters) during the FLSA Collective Period.  *Id.* ¶ 19.  Some FLSA Collective Members will also be California Class Members and/or PAGA Representative Members.  *Id.*  The FLSA Collective Period is from September 26, 2019 to May 31, 2023.  *Id.* ¶ 18.

**PAGA Representative Group**:  Consists of all current and former employees employed by Defendant as Interpreters in the State of California during the PAGA Period.  *Id.* ¶ 35.  Some PAGA Representative Group Members may also be California Settlement Class Members and/or members of the FLSA Settlement Collective.  *Id.*  Each individual described in the first sentence is automatically and without exception part of the PAGA Representative Group, regardless of whether they are members of the California Settlement Class or of the FLSA Settlement Collective.  *Id.*  The individuals described in the first sentence need not opt-in and cannot opt out of the PAGA Representative Group.  *Id.*  The PAGA Period is from September 26, 2021 to May 31, 2023.  *Id.* ¶ 34.

*///*

---

[2] Capitalized terms not otherwise defined herein have the definitions given to them in the Settlement Agreement.

The gross settlement amount is $2,700,000.00 (the "Gross Settlement Amount"). *Id.* ¶ 23.  The parties have allocated $250,000.00 of the Gross Settlement Amount as penalties under the PAGA ("PAGA Gross Settlement Amount").  *Id.* ¶ 65.  This represents roughly 9% of the Gross Settlement Amount.

As to deductions, the Settlement Agreement provides for the following:  (1) Class Counsel's attorneys' fees not to exceed $900,000.00; (2) Class Counsel's costs and expenses not to exceed $36,000.00; (3) Named Plaintiffs' Service Awards not to exceed $7,500.00 each, for a total of $22,500.00; (4) Settlement Administration Fees not to exceed $50,000.00; and (5) the PAGA Gross Settlement Amount of $250,000.00, which includes payment to the PAGA Representative Group and the LWDA.  *Id.*

In their motion, Plaintiffs request the Court approve the deductions above.  *See generally* Doc. No. 36.  The only deduction that differs from the Settlement Agreement is Class Counsel's costs and expenses, which are lower than the allotted $36,000.00.  In their supplemental brief, Class Counsel request $31,110.36 in costs.[3]  Doc. No. 40 at 4. According to the motion and confirmed by Class Counsel at the Final Approval Hearing, there are 1,469 FLSA Collective Members who opted in (29.43% opt-in rate) and 186 California Class Members (100% participation rate).  Doc. No. 36-1 at 11; *see also* Doc. No. 36-6 ("Declaration of Madely Nava" or "Nava Decl.") ¶¶ 18–19.

On May 2, 2024, notices were sent out to 5,002 individuals consisting of 4,996 FLSA Collective Members, 186 California Class Members, and 132 Aggrieved Employees.  Nava Decl. ¶¶ 5, 7.  According to the declaration of Madely Nava, a case manager for Settlement Administrator Apex Class Action, LLC, 853 notices were returned as undeliverable with no forwarding address.  *Id.* ¶ 8.  The Settlement Administrator was able to successfully find 26 updated addresses and re-mailed 741

---

[3] Class Counsel notes in their supplemental brief that they are now requesting $750.01 less than what they originally requested in their motion, which was $31,860.37.  *See* Doc. No. 40 at 4.

notices.  *Id.* ¶ 8–9.  Accordingly, 4,890 out of the 5,002 Class/Collective Members were mailed notices.  *See* Doc. No. 36-1 at 13.

The estimated Net Settlement Amount ("NSA") is $1,341,351.79.  Nava Decl. ¶ 17.  The NSA will be distributed equally, with $670.675.80 allocated to California Class Members and $670,675.89 allocated to FLSA Collective Members.  *Id.*

The average payment to a participating FLSA Collective Member will be $457.49 and the highest payment will be $1,468.30.  *Id.* ¶ 18.  The average payment to a participating California Class Member is approximately $3,605.78 and the highest payment is estimated to be $11,706.54.  *Id.* ¶ 19.  The average PAGA payment to an individual aggrieved employee is approximately $473.48 and the highest payment is approximately $757.68.  *Id.* ¶ 20.

For California Class Members who are also participating FLSA Collective Members, the average individual payment is estimated to be $3,802.48.  *Id.* ¶ 19.  For California Class Members who are participating FLSA Collective Members and are part of the PAGA Representative Group, the average individual payment is estimated to be $5,660.03.  *Id.*  The highest individual settlement amount for all Class/Collective Members is estimated to be $12,439.25, while the average individual amount is estimated to be $601.89.  *Id.* ¶ 22.

As confirmed by the parties at the Final Approval Hearing, there are no objections to the Settlement Agreement or opposition to the motion.

## CERTIFICATION OF THE SETTLEMENT CLASS

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b)—as relevant

here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Prior to certifying the class, the Court must determine that Plaintiffs have satisfied their burden of demonstrating that the proposed class satisfies each element of Rule 23.

## A.    Rule 23(a) Requirements

The Preliminary Approval Order found that the putative class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements under Rule 23(a). Doc. No. 33 at 3. Since that time, there have not been any developments that would change the Court's provisional analysis, and neither Plaintiffs nor Defendant have indicated that such developments have occurred. Accordingly, the Rule 23(a) requirements are met.

## B.    Rule 23(b) Requirements

The Preliminary Approval Order likewise found that the prerequisites of Rule 23(b)(3) were satisfied. *Id.* Again, the Court is unaware of any changes that would alter its provisional analysis, and there was no indication in Plaintiffs' papers that any such developments have occurred. Further, there were no objections by individual class members who claim to have an interest in controlling the prosecution of this action or related actions. Accordingly, the Rule 23(b) requirements are met.

## C.    Rule 23(c)(2) Notice Requirements

If the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and content of the notice. *See Ravens v. Iftikar*, 174 F.R.D. 651, 658 (N.D. Cal. 1997). Although the notice must be "reasonably certain to inform the absent members of the plaintiff class," Rule 23 does not

require actual notice.  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (internal quotation marks and citation omitted).

The notice requirements under Rule 23(c)(2)(B) are met here.  The Notice includes, among other information: a description of the lawsuit, including a brief overview of the claims in plain language; contact information for Class Counsel and the Settlement Administrator; the terms of the settlement including a summary of the settlement amount, its distribution, and the methodology for calculating the individual settlement shares for both the class and collective action; and the release of claims.  *See* Doc. No. 36-6 at 10–14.  The Notice also informs class members of how to: (1) participate in both the class and collective actions; (2) opt-out of the settlement class by mailing a written "Request for Exclusion" to the Settlement Administrator; and (3) object to the settlement.  *Id.* at 13–15.  Class members were further notified that they could attend the final fairness hearing in person or through an attorney but were not required to do so.  *Id.* at 15.

The Court is satisfied that the content of the Notice was sufficient under Rule 23(c)(2)(B).  *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks and citation omitted).  Because the settlement class satisfies Rules 23(a) and 23(b)(3), and notice was sufficient in accordance with Rule 23(c), the Court **GRANTS** class certification for settlement purposes.

## CERTIFICATION OF THE FLSA COLLECTIVE

Under the FLSA, an employee may bring a "collective action" on behalf of other "similarly situated" employees.  29 U.S.C. § 216(b); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018) (noting that a party plaintiff and putative collective members are "similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims").  The Court's Preliminary Approval Order granted conditional certification of the FLSA

collective because Plaintiffs made a plausible showing that they were similarly situated to the putative collective members. *Id.* at 2. There is nothing to suggest the Court was wrong on that score; thus, the Court **GRANTS** certification of the FLSA collective for settlement purposes.

"If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute a fair and reasonable resolution of a bona fide dispute." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at *3 n.5 (N.D. Cal. Apr. 15, 2014) (collecting cases) (internal quotation marks and citation omitted). "[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a [class action] settlement" under Rule 23(e). *See id.* at *11 (applying same fairness factors to settlement involving FLSA collective and class action). Thus, the Court will address the fairness of the settlement as it pertains to both the class and collective actions using the same factors.

<u>FINAL APPROVAL OF THE SETTLEMENT</u>

**A.    Legal Standard**

In determining whether a class action and FLSA collective settlement is fair, adequate, and reasonable, determination, courts generally consider the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575; *see also Otey*, 2014 WL 1477630, at *4 (applying same factors to FLSA collective action settlement). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . .

factors alone is [insufficient]." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). In such cases, courts must also ensure that the settlement did not result from collusion among the parties. *Id.* at 946–47.

As discussed below, a review of the fairness and *Bluetooth* factors indicates that the settlement is fair, adequate, and reasonable.

**B.   Discussion**

    *1.   The Fairness Factors*

        a.   <u>Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

The Court first considers "the strength of [Plaintiffs'] case on the merits balanced against the amount offered in the settlement." *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (internal quotation marks and citation omitted). Although this action reached settlement before the Court had occasion to consider the merits of Plaintiffs' claims, the Court need not reach an ultimate conclusion about the merits of the dispute now, "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.*

Here, the FAC alleges multiple Labor Code violations and claims under the UCL and the PAGA. *See generally* FAC. Although Plaintiffs believe their claims are meritorious, Plaintiffs note in their motion that Defendant asserted defenses regarding the

meal and rest break, minimum wage, overtime, and reimbursement claims.  Doc. No. 36-1 at 13.  Further, Plaintiffs contend this case was "poised for contentious pre-certification law-and-motion work which would have consumed a substantial amount of attorney time, court time, and depending on the motions and the result, potential appeals to the Ninth Circuit."  *Id.* at 13–14.

Given the risks and costs of continued litigation, the immediate reward to class/collective members through settlement is preferable.  The average payment to a participating FLSA Collective Member will be $457.49 and the highest payment will be $1,468.30.  Nava Decl. ¶ 18.  The average payment to a participating California Class Member is approximately $3,605.78 and the highest payment is estimated to be $11,706.54.  *Id.* ¶ 19.  The average PAGA payment to an individual aggrieved employee is approximately $473.48 and the highest payment is approximately $757.68.  *Id.* ¶ 20.  The benefit of receiving this money now rather than later at some unidentified and uncertain time has its own value.  Thus, the challenges Plaintiff would face should this case move forward instead of settling, in contrast to the finality and speed of recovery under the Settlement Agreement, weighs in favor of approving the settlement.

b.   <u>Risk of Maintaining Class Action Status Throughout Trial</u>

The Court looks to the risk of maintaining class certification if the litigation were to proceed.  Plaintiffs assert that maintaining certification through trial would be both difficult and expensive given Defendant's contentions that Plaintiffs were indeed paid for all regular and overtime hours worked and were properly reimbursed for business expenses incurred.  Doc. No. 36-1 at 14–15.  In light of Defendant's potential defenses and the size of the class, it appears certifying the class would present difficulties—both financial and on the merits—that weigh in favor of approving the settlement.

c.   <u>Settlement Amount</u>

The amount of recovery offered, also favors final approval of the settlement.  When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that

must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (collecting cases).

In granting preliminary approval, the Court concluded that the estimated payout to class and collective members was fair in relation to the risks of continued litigation, Doc. No. 33 at 2, and there is nothing in the final approval materials that changes the Court's analysis on that score. Moreover, no class members have opted out of the settlement. Thus, that "the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Therefore, the Court finds that the amount offered in settlement also weighs in favor of final approval.

d.  Extent of Discovery Completed and Stage of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Rather, a court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros*, 303 F.R.D. at 371. Class Counsel engaged in informal discovery with Defendant, thoroughly investigated the claims, and participated in a successful private mediation with an experienced mediator. Doc. No. 36-1 at 17; *see also* Doc. No. 33. Therefore, based on Plaintiffs' motion and the declarations of Class Counsel, "there is no indication that Plaintiff[s] rushed into settlement or was otherwise ill-informed about the case and could not 'reasonably assess its strengths and value.'" *Id.* at 18 (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. May 31, 2007)).)

///

1

e.      Experience and Views of Counsel

2

The experience and views of counsel also weigh in favor of approving the

3

settlement.  Class Counsel Shant A. Karnikian, managing partner of Kabateck LLP,

4

attests that his firm has a substantial record of success in litigating high-stakes cases and

5

is one of the leading plaintiffs' law firms in California.  Doc. No. 36-2 at 2 ¶ 3.  Class

6

Counsel Michael Fradin attests that he has over 17 years of experience practicing law and

7

is highly experienced in class action litigation.  Doc. No. 25-4 at 5 ¶ 10.  Mr. Fradin

8

believes the settlement is fair, adequate, and reasonable given the uncertainty of trial and

9

whether the collective and class would be certified.  *Id.* at 4 ¶ 8.  In addition, Class

10

Counsel James Simon attests that since 2015 his practice has consisted of almost

11

exclusively wage and hour litigation and that he has served as counsel of record in well

12

over 100 different wage and hour class and collective action cases with great success.

13

Doc. No. 25-3 at 5 ¶ 10.

14

Class Counsel attest that they thoroughly investigated Plaintiffs' claims, exchanged

15

informal discovery with Defendant, and engaged in private mediation before reaching a

16

settlement that they believe is fair and reasonable to the class given the legal uncertainties

17

underlying Plaintiffs' claims and risks of continued litigation.  *See* Doc. Nos. 25-3 at 5

18

¶ 8; 25-4 at 4 ¶ 8.  Class Counsel's experience in California wage-and-hour litigation and

19

their assertion that the settlement is fair, adequate, and reasonable supports final approval

20

of the settlement.  *See DIRECTV, Inc.*, 221 F.R.D. at 528 ("Great weight is accorded to

21

the recommendation of counsel, who are most closely acquainted with the facts of the

22

underlying litigation.") (internal quotation marks and citation omitted).

23

f.      Presence of a Government Participant

24

No government entity is a party to this action and Plaintiffs submitted written

25

notice of Defendant's alleged wage-and-hour violations to the LWDA on September 26,

26

2022 in accordance with the PAGA.  Doc. No. 3 at 53.  In addition, no government entity

27

had raised an objection to the proposed settlement.

28

///

g.      Reaction of Collective/Class Members

As previously discussed, the Settlement Administrator attests that 4,890 out of the 5,002 Class/Collective Members were mailed notices.  *See* Doc. No. 36-1 at 13; Nava Decl. ¶¶ 5–9.  There have been no objections concerning the settlement or Plaintiffs' motion for attorneys' fees.  "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (internal quotation marks and citation omitted).  Thus, the Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Id.* (internal quotation marks and citation omitted).

In sum, the fairness factors weigh in favor of granting Plaintiffs' motion for final approval of the settlement.

2.      The *Bluetooth* Factors

Given that the parties settled prior to class certification, the Court must look beyond the *Churchill* factors and examine the settlement for evidence of collusion with an even higher level of scrutiny.  *See Bluetooth*, 654 F.3d at 946.  The question here is whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion.  *See id.*  In determining whether the settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations."  *Id.* at 947.  The Ninth Circuit has identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* at 947 (internal quotation marks and citations omitted).

Here, none of the three warning signs that the Ninth Circuit identified is present. First, the class and collective both receive monetary distributions and Class Counsel's award of attorneys' fees, which is discussed further below, is 33% of the Gross Settlement Amount and is in line with California courts that routinely award attorneys' fees of one-third of the common fund. Second, the Settlement Agreement does not contain a "clear sailing" provision. Finally, the third warning sign—whether the parties have arranged for fees not awarded to the class to revert to defendants rather than be added to the class fund, *see Bluetooth*, 654 F.3d at 948—is also not present here. Instead, the non-reversionary Settlement Agreement provides that "[a]ny portion of the requested amount [of fees] not approved, if there is no appeal taken by Class Counsel, shall be part of the Net Settlement Amount and allocated equally between the FLSA Collective, California Class, and PAGA Representative Group." Doc. No. 36-2 at 41.

**C. Conclusion**

Upon due consideration of the factors set forth above, the Court finds that the FLSA Collective and Class Settlement is on balance "fair, reasonable, and adequate" under Rule 23(e)(2) and that the settlement was not the result of collusion between the parties. Therefore, the Court **GRANTS** Plaintiffs' motion for final approval of the Settlement.

///

**D.    PAGA Penalty**

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).  A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Ct.*, 95 Cal. Rptr. 3d 588, 600 (Cal. 2009).  A PAGA plaintiff thus has "the same legal right and interest as state labor law enforcement agencies" and the action "functions as a substitute for an action brought by the government itself"; therefore, "a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.*  A plaintiff bringing a representative PAGA action not only owes a duty to their "fellow aggrieved workers," but "also owes responsibility to the public at large; they act, as the statute's name suggests, as a private attorney general." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal. 2016).

Under PAGA, civil penalties collected are distributed between the aggrieved employees (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement of PAGA claims must be approved by the Court.  Cal. Lab. Code § 2699(l)(2).  The proposed settlement must also be sent to the agency at the same time that it is submitted to the court.  Cal. Lab. Code § 2699(l)(2).

While PAGA requires a trial court to approve a PAGA settlement, district courts have noted there is no governing standard to review PAGA settlements. *Sanchez v. Frito-Lay, Inc.*, No. 1:14cv797-DAD-BAM, 2019 U.S. Dist. LEXIS 170556, at *31 (E.D. Cal. Sept. 30, 2019) (acknowledging the "absence of authority governing the standard of review of PAGA settlements").  "'[N]either the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer' as to what the appropriate standard is for approval of a PAGA settlement." *Jordan v. NCI Grp., Inc.*, No. EDCV 161701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017)).  Consequently,

some district courts have used the guidance provided by the LWDA in *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016), in assessing the proposed settlement of the PAGA claims.  *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); *Sanchez*, 2019 U.S. Dist. LEXIS 170556, at *32.  In *O'Connor*, the LWDA commented,

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*O'Connor*, 201 F. Supp. 3d at 1133.  Based on LWDA's response in *O'Connor*, district courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate."  *Haralson*, 383 F. Supp. 3d at 972.

First, in accordance with the statutory requirements, Plaintiffs submitted the Settlement Agreement to the LWDA.  Doc. No. 36-2 ¶ 72.  The Court finds it persuasive that the LWDA was permitted to file a response to the proposed Settlement and no comment or objection has been received.

The Settlement Agreement provides for a $250,000.00 PAGA Penalty.  *Id.* ¶ 23.  As noted above, this represents approximately 9 percent of the Gross Settlement Amount.  Further, the Settlement Agreement provides that 75% of the PAGA Penalty ($187,500.00) will be paid to the LWDA and 25% will be paid to the PAGA Representative Group ($62,500.00), in accordance with California Labor Code § 2699(i).  The average payment to PAGA Representative Group Members is $473.48, while the highest payment is $757.68.  Nava Decl. ¶ 20.

///

Based on the foregoing, the Court finds that the $250,000.00 PAGA Penalty is fundamentally fair, reasonable, and adequate, as well as in line with the policies underlying the PAGA.

### ATTORNEYS' FEES AND COSTS

Plaintiffs seek an award of attorneys' fees in the amount of $900,000.00, which is one-third of the Gross Settlement Amount, as well as litigation costs in the amount of $31,110.36.  Doc. Nos. 26-1 at 25; 40 at 4.

**A.    Attorneys' Fees**

*1.    Legal Standard*

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  And as mentioned above, in addition to the reasonableness inquiry mandated under Rule 23(h), "district courts must now consider 'the terms of any proposed award of attorney's fees' when determining whether 'the relief provided for the class is adequate'" pursuant to Rule 23(e).  *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)).  Importantly, "whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper."  *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999).

The Court has discretion in a common fund case such as this to choose either the lodestar method or the percentage-of-the-fund method when calculating reasonable attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Under the percentage-of-recovery method, 25% of a common fund is the Ninth Circuit's benchmark for fee awards. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").  However, Ninth Circuit has held that in cases where state law claims

predominate, state law governs the method of calculating fee awards. *See Mangold v. Cal. Pub. Utils, Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (stating that the Ninth Circuit has "applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The California Supreme Court has held that in common fund cases, a trial court may award class counsel a fee out of that fund by choosing an appropriate percentage of the fund. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (Cal. 2016). And "California courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (approving a fee award of one-third of the $15,150,000 settlement fund in a class action settlement); *see Laffitte*, 1 Cal. 5th at 506 (approving a fee award of one-third of the gross settlement amount in a wage and hour class action settlement); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (Cal. Ct. App. 2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). "Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent." *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013).

In addition, under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941.

Overall, whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *See id.* at 1050–51.

///

*2.     Discussion*

Class Counsel consists of the law firm of Kabateck LLP, with attorneys Brian Kabateck, Jerusalem Beligan, Shant Karnikian, and Sheri Lalehzarian, as well as James Simon of Simon Law Co. and Michael Fradin of Fradin Law.  Class Counsel were retained on a contingency fee basis and request a fee award of $900,000.00, or one-third of the Gross Settlement Amount.  Doc. No. 36-1 at 25, 27.  This amount exceeds the Ninth Circuit's "benchmark" for a reasonable fee award under the percentage-of-recovery method.  *See, e.g.*, *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 570 (9th Cir. 2019) (noting the 25% benchmark).  However, one-third the common fund is in line with California precedent and similar wage and hour cases.  *See Martin v. AmeriPride Servs., Inc.*, No. 08cv440-MMA (JMA), 2011 WL 2313604 at *8 (S.D. Cal. June 9, 2011) (finding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark); *Craft v. Co. of San Bernardino*, 624 F.Supp.2d 1113, 1127 (C.D. Cal. 2008) (same).  "More particularly, courts may award attorneys' fees in the 30–40% range in wage and hour class actions that result in recovery of a common fun under $10 million." *Martin*, at *8 (citing *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010); *see also Lewis v. Wendy's Intl., Inc.*, No. 09-07193 MMM (JCx), 2011 WL 13176648 at *13 (C.D. Cal. Jun. 30, 2011) ("Courts regularly award attorneys' fees equal to 30–40% of a settlement fund in wage and hour class actions that result in recovery of less than $10 million.").  Furthermore, another court in this District recently approved a similar award for the same Class Counsel in a 2023 wage and hour case.  *See Oliveira, et al. v. AMN Healthcare Language Services, Inc.*, Case No. 22-cv-00003-JES-SBC, Doc. Nos. 56–57 (S.D. Cal. 2023) (approving attorneys' fee award of $1,000,000.00 out of a gross settlement of $3,000,000.00).  Moreover, it appears the instant settlement was achieved by extensive work by Class Counsel, including informal class discovery, extensive investigation into the merits of the case, and a full-day mediation, which resulted in a meaningful settlement following a mediator's proposal.

1   The Court now will turn to the lodestar cross-check, beginning with calculation of

2   the lodestar figure.

3             a.    Lodestar Calculation

4   In order to determine the lodestar figure, the Court calculates the number of hours

5   reasonably expended on the litigation and then multiplies that number by a reasonable

6   hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

7   The Court first considers whether Class Counsel's hourly rates are reasonable.  A

8   reasonable hourly rate is typically based upon the prevailing market rate in the

9   community for "similar work performed by attorneys of comparable skill, experience,

10  and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986)

11  (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

12  Here, Plaintiffs requests hourly rates ranging from $200 (law clerk rate) to $900.

13  Doc. No. 40 at 3.  In addition to the declarations of counsel, the Court relies on its own

14  knowledge and experience of customary rates concerning reasonable and proper fees, *see*

15  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011), and considers the relevant *Kerr*

16  factors.[4]  *See Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992)

17  (finding that district courts may consider the *Kerr* factors in determining an appropriate

18  market rate).  Recently, courts in this District have awarded hourly rates for work

19  performed in civil cases by attorneys with significant experience anywhere in range of

20  $550 per hour to more than $1000 per hour.  *See, e.g., Herring Networks, Inc. v.*

21  *Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 U.S. Dist. LEXIS 23163, at *21 (S.D. Cal.

22

23  ───────────────

24  [4] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions

25  involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other
    employment by the attorney due to acceptance of the case, (5) the customary fee, (6) time limitations

26  imposed by the client or the circumstances, (7) the amount involved and the results obtained, (8) the
    experience, reputation, and ability of the attorneys, (9) the 'undesirability' of the case, (10) the nature

27  and length of the professional relationship with the client, and (11) awards in similar cases.  *See Kerr v.*
    *Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975).

28

Feb. 5, 2021) (finding $1150–$1050 to be reasonable rates for partners with more than 30 years of experience from a Top 100 law firm); *Kries v. City of San Diego*, No. 17-cv-1464-GPC-BGS, 2021 U.S. Dist. LEXIS 6826, at *26–27 (S.D. Cal. Jan. 13, 2021) (finding rates of $650 per hour for attorneys with more than 30 years of experience to be reasonable); *Sunbelt Rentals, Inc. v. Dubiel*, No. 20-cv-876-WQH-BGS, 2020 WL 6287462, at *2 (S.D. Cal. Oct. 27, 2020) (finding $405 rate per hour to be a reasonable rate for a partner in a breach of contract action); *Kailikole v. Palomar Cmty. Coll. Dist.*, No. 18-cv-2877-AJB-MSB, 2020 WL 6203097, at *3 (S.D. Cal. Oct. 22, 2020) (finding $550 rate per hour to be a reasonable rate for a partner in an employment action); *Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-CV-2749-WQH-BLM, 2020 WL 1550234, at *1–2, 7 (S.D. Cal. Apr. 1, 2020) (approving of rates between $700 and $725 for attorneys with approximately 30 years of experience and rate of $550 for attorney with 12 years of experience); *San Diego Comic Convention v. Dan Farr Productions*, No. 14cv1865-AJB-JMA, 2019 WL 1599188, at *13–14 (S.D. Cal. Apr. 15, 2019) (finding reasonable the hourly rates of $760 for partners from a Top 100 law firm with 28-29 years of experience), *attorney fees aff'd* by 807 F. App'x 674 (9th Cir. Apr. 20, 2020); *Kikkert v. Berryhill*, No. 14cv1725-MMA-JMA, 2018 WL 3617268, at *2 n.1 (S.D. Cal. July 30, 2018) (an unopposed fee motion after a successful social security appeal, finding de facto hourly rate of $943 reasonable, citing other decisions in the district approving rates from $656 to $886). Based upon the record and experience, the Court finds that Class Counsel's rates are reasonable.

The Court next considers whether Class Counsel's expenditure of 721.3 hours on this case is reasonable. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley*, 461 U.S. at 433, 437). A district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry*, 751 F.3d at 1111 (citing *Moreno*, 534 F.3d at 1112). However, the Court

"should exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434.  Hours are not "reasonably expended" if they are "excessive, redundant, or otherwise unnecessary." *Id*.

Class Counsel has provided billing records, which indicate that the hours of work performed on this case were generally reasonable, necessary, and thus compensable.  *See* Doc. No. 40.  Moreover, "[t]he lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546, 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008).  Accordingly, "the lodestar can be approximate and still serve its purpose." *Id*.

Here, having found that the hourly rates and hours expended to be reasonable, the Court agrees with Class Counsel's calculation of the lodestar figure in this case of $411,949.50.  Doc. No. 40 at 3.

### b.   Lodestar Crosscheck

This Court has previously acknowledged that "California courts routinely award attorneys' fees of one-third of the common fund." *Espinosa v. Cal. Coll. of San Diego, Inc.*, No. 17cv744-MMA (BLM), 2018 U.S. Dist. LEXIS 60106, at *24 (S.D. Cal. Apr. 9, 2018) (quoting *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017)) (collecting cases). But "[r]egardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is *reasonable*." *Espinosa*, 2018 U.S. Dist. LEXIS 60106, at *27–28 (emphasis added) (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)).  "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.  Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050.

1    Courts retain discretion to apply a positive or negative enhancement, or
2  "multiplier" to the lodestar where appropriate.  *See Ketchum v. Moses*, 24 Cal. 4th 1122,
3  1132 (2001) (noting that the lodestar may be adjusted based on factors including "(1) the
4  novelty and difficulty of the questions involved, (2) the skill displayed in presenting
5  them, (3) the extent to which the nature of the litigation precluded other employment by
6  the attorneys, [and] (4) the contingent nature of the fee award"); *see also Bluetooth*, 654
7  F.3d at 942 (noting that a lodestar may be adjusted "upward or downward by an
8  appropriate positive or negative multiplier reflecting a host of reasonableness factors,
9  including the quality of the representation, the benefit obtained for the class, the
10 complexity and novelty of the issues presented, and the risk of nonpayment") (internal
11 quotation marks and citation omitted).  In California, state courts have defined reasonable
12 multipliers on a lodestar cross-check to "range from 2 to 4 or even higher."  *Wershba v.
13 Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001); *see also Sutter Health
14 Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (applying a 2.52 multiplier
15 on a cross-check in an antitrust class action); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th
16 43, 60 (applying a 2.5 multiplier on a lodestar cross-check); *Laffitte v. Robert Half Int'l*,
17 231 Cal. App. 4th 860, 881–82 (2014) (after finding that "2 to 4" is a reasonable range
18 for multipliers on a cross-check, the court of appeal affirmed a 2.13 multiplier.).  The
19 multiplier is calculated by dividing the percentage fee award by the lodestar calculation.
20 *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).
21 Here, a multiplier of 2.18 is calculated by dividing $900,000.00 by $411,949.50.  Given
22 the Court's review of Class Counsel's declarations as well as the record and relevant *Kerr*
23 factors, the Court finds that the multiplier of 2.18 is reasonable.

24    Therefore, the Court finds that the lodestar crosscheck supports the requested fee
25 award in this case.  Accordingly, the Court **GRANTS** Plaintiffs' motion for an attorneys'
26 fee award of $900,000.00.
27 ///
28

**B.    Costs**

Plaintiffs also request reimbursement for $31,110.36 in actual litigation costs expended by Class Counsel.  Doc. No. 40 at 4.

*1.    Legal Standard*

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting the case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970)).

*2.    Discussion*

Plaintiffs seek an award of costs totaling $31,110.36 expended by Class Counsel for court fees, mediation fees, legal research fees, and expert fees.  Doc. Nos. 36-1 at 32; 40 at 19–29, 34–46, 57–63.  The Court finds that upon review of the record, which includes invoices, receipts, and credit card charges, the requested award is reasonable.  Costs for service of process are taxable under 28 U.S.C. § 1920 as well as Civil Local Rule 54.1.b.1, which provides that "(c)osts for service of subpoenas are taxable as well as service of summonses and complaints."  Filing fees are recoverable under 28 U.S.C. §1920(1).  Additionally, the Ninth Circuit has held that an award to a prevailing party "can include reimbursement for out-of-pocket expenses including . . . travel, courier and copying costs."  *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010).  Other recoverable expenses include expenses related to discovery and research, *see Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994) (noting that "expenses related to discovery" are recoverable); *Trs. Of Constr. Indus. & Laborers' Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258–59 (9th Cir. 2006) (holding that "reasonable charges for computerized research may be recovered."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) (holding that consulting fees as costs were reasonable

because the evidence was necessary to negotiate a settlement), as well as mediation fees, *see Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (noting that costs such as mediation fees are the "types of costs [ ] routinely reimbursed").

Accordingly, because Class Counsel's out-of-pocket costs were reasonably incurred in litigating this action and were advanced by Counsel for the benefit of the Class, the Court **APPROVES** reimbursement of litigation costs in the full requested amount of $31,110.36.  *See, e.g.*, *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016).

## CLASS REPRESENTATIVE SERVICE AWARD

Plaintiffs request, and the Settlement Agreement provides for, a class representative award of $7,500.00 per Named Plaintiff, for a total of $22,500.00.  Doc. Nos. 36 at 3; 36-2 at 40–41.

As the Ninth Circuit has stated, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1164 (9th Cir. 2013). In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), which analyzes: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.  *See, e.g.*, *Carter v. Anderson Merchs., LP*, No. EDCV 08-0025-VAP, 2010 U.S. Dist. LEXIS 55629, 2010 WL 1946757, at *3 (C.D. Cal. May 11, 2010); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG, 2010 U.S. Dist. LEXIS 67731, 2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010).

Here, the amount requested as a service award, $22,500.00, is only 0.83% of the Gross Settlement Amount.  There are declarations from each Named Plaintiff included

with Plaintiffs' Motion for Preliminary Approval discussing their time invested and reputational risks. *See* Doc. Nos. 25-5; 25-6; 25-7. In addition, as confirmed by Class Counsel at the Final Approval Hearing, no Collective or Class Member has objected to the requested award. Having reviewed the record and considered the relevant factors, the Court finds the requested Class Representative Service Award of $7,500.00 per Named Plaintiff reasonable.

Accordingly, the Court **APPROVES** Plaintiffs' request for a class representative service award and **AWARDS** each Named Plaintiff $7,500.00, for a total of $22,500.00.

### SETTLEMENT ADMINISTRATION COSTS

Finally, the Settlement Agreement authorizes $50,000.00 for Settlement Administration costs incurred and anticipated by the Settlement Administrator, Apex Class Action, LLC. Doc. No. 36-2 at 42. Class Counsel seek approval of the full amount of Settlement Administration costs. Doc. No. 36 at 3. In support, Apex's case manager attests to the amount requested and details both completed and anticipated tasks by Apex. Nava Decl. ¶ 22. In addition, no objections have been made to these costs. Therefore, the Court finds the requested fees are adequately supported and reasonable. Accordingly, the Court **GRANTS** the request and awards Apex $50,000.00 in Settlement Administration costs.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' motion for final approval of the FLSA collective and class settlement, Doc. No. 36.

1. The Court **CERTIFIES** this action as a FLSA collective action under 29 U.S.C. § 216(b) and as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) for the purposes of settlement only.

2. The Court **APPROVES** the Settlement Agreement, attached as Exhibit 1 to the Declaration of Shant A. Karnikian (Doc. No. 36-2 at 11–58) as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e). For purposes of

this Order, the Court adopts all defined terms as set forth in the Settlement Agreement.

3. The Court **ORDERS** the parties to undertake the obligations set forth in the Settlement Agreement and **DIRECTS** that the Gross Settlement Amount be distributed in accordance with the terms of the Settlement Agreement.

4. The Court finds that distribution of the Notices of Settlement directed to Class/Collective Members as set forth in the Settlement Agreement and the other matters set forth therein have been completed in substantial conformity with the Preliminary Approval Order, including individual notice to all Class/Collective Members who could be identified through reasonable effort.

5. The Court finds and determines that the notice procedure afforded adequate protections to Class/Collective Members.  The Notices of Settlement provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and the Notices of Settlement fully satisfied the requirements of due process.

6. The Court excludes from the California Settlement Class those persons who properly and timely request exclusion.

7. The Court **APPROVES** the PAGA Gross Settlement Amount of **$250,000.00**.

8. The Court **AWARDS** attorneys' fees to Class Counsel in the amount of **$900,000.00** and costs in the amount of **$31,110.36**.

9. The Court **AWARDS** administration costs to the Settlement Administrator Apex Class Action, LLC in the amount of **$50,000.00**.

10. The Court further **AWARDS** to Named Plaintiffs an incentive payment for work performed as the class representatives in the amount of **$7,500.00** each, for a total of **$22,500.00**.

11. The Court **DISMISSES** this action **with prejudice** with respect to the claims of Named Plaintiffs, the California Settlement Class, the FLSA Settlement Collective,

and the PAGA Representative Group. The Court also declares that Named Plaintiffs are bound by the Named Plaintiff Release, all California Settlement Class Members are bound by the California Release, all FLSA Settlement Collective Members are bound by the FLSA Release, and all PAGA Representative Group Members are bound by the PAGA Release.  These Settlement Group Members are permanently barred from prosecuting the Released Claims.

12. The Court **DIRECTS** the Clerk of Court to enter a separate judgment of dismissal in accordance herewith, *see* Fed. R. Civ. P. 58(a), and to close this case.

13. Without affecting the finality of this Order, the Court maintains jurisdiction over this matter for purpose of enforcing the Judgment.

**IT IS SO ORDERED**.

Dated:  August 30, 2024

HON. MICHAEL M. ANELLO
United States District Judge